UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA CUNLIFFE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 12-cv-06334 |
| | ) | |
| JEFFREY WRIGHT, in his individual and official capacities; | ) | Judge John W. Darrah |
| CHERYL COLSTON, in her individual and official | ) | |
| capacities; THOMAS KRIEGER, in his individual and | ) | |
| official capacities; RESHORNA M. FITZPATRICK, in her | ) | |
| individual and official capacities;  RHONDA JONES, in her | ) | |
| individual and official capacities;  JAMES SULLIVAN, in | ) | |
| his individual and official capacities; the BOARD OF | ) | |
| EDUCATION OF THE CITY OF CHICAGO; and | ) | |
| JANE AND JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angela Cunliffe, proceeding *pro se*, has filed a nineteen-count Second Amended

Complaint ("SAC") against eleven Defendants, alleging various constitutional, statutory and

common law claims, relating to her dismissal as a counselor at a Chicago high school.  Cunliffe

seeks injunctive relief and monetary damages in the amount of $4,000,000, plus punitive

damages.  Cunliffe has served only three Defendants:  the Board of Education of the City of

Chicago; Principal Jeffrey Wright; and Director of the Office of the Inspector General,

James Sullivan.[1]  Those Defendants have moved to dismiss the SAC under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim and for being time-barred.  For the reasons stated

below, Defendants' Motion [96] is granted.

---

[1] In their Motion, Defendants Sullivan, Wright and the Board have requested that the
entire SAC be dismissed against all Defendants.

## BACKGROUND

The following is taken from the SAC, which is assumed to be true for purposes of a motion to dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Cunliffe is an African-American female and a resident of Cook County, Illinois. She was an employee of Defendant, the Board of Education of the City of Chicago (the "Board") and, during the times relevant to the SAC, was a school counselor at King College Preparatory High School ("King") in Chicago, Illinois. (SAC ¶¶ 1, 10.) Defendant Wright, who has been named in his individual and official capacities, was the principal at King during the relevant times. Defendant Sullivan is the Director of the Office of the Inspector General for the Board.

Cunliffe was first hired by the Board as a teacher in 1992, and in 2000, she became a school counselor. In that position, she received "superior" performance ratings and was on the Board's principal eligibility list for several years, including until the end of September 2009. (*Id.* ¶¶ 23-27.) During the 2008-2009 school year, Cunliffe was assigned responsibility for a program called Students in Temporary Living Situations ("STLS") at King. (*Id.* ¶¶ 29, 30). The STLS program provides benefits and services to homeless students, including free meals and other monetary benefits, and is paid for with public funds. (*Id.* ¶ 29). As King's liaison for the STLS program, Cunliffe was responsible for coordinating the educational services to homeless students enrolled or seeking enrollment at King, including identifying students that met categories of homelessness and advising them of their rights. (*Id.* ¶ 31.) Cunliffe also was responsible for completing and signing enrollment forms, which Wright also was required to sign. (*Id.* ¶ 33.)

Rhonda Jones, who has been named as a Defendant but not served, worked as an aide or clerk in the STLS program at King. Jones was responsible for entering information about

enrolled homeless students into the Board's computer database system. She also was the official student records custodian for King. (*Id.* ¶¶ 36-37.) She also was allegedly Wright's girlfriend. (*Id.* ¶ 15.)[2]

In June 2009, upon the request by a member of the Board, Cunliffe generated a month-end report from the database. Cunliffe discovered that Jones had impermissibly enrolled her three children as participants in the STLS program at King and that they were improperly receiving benefits. (*Id.* ¶¶ 38-42.) Cunliffe raised the issue with Wright, who stated that Jones and her children did not fit the STLS's requirements and that he did not know how they got enrolled. Cunliffe then asked Wright to investigate possible fraud and theft in connection with the STLS program. When Cunliffe attempted to follow up with Wright, he did not respond. Cunliffe also reported her suspicion of fraud about Jones to the Board's Office of the Inspector General (the "OIG"). (*Id.* ¶¶ 47-50.)

After Cunliffe reported her concerns, Wright became hostile towards her and told her that no one wanted to work with her because of her report to the OIG. Cunliffe was again assigned to act as liaison to the STLS program for the 2009-2010 school year. Wright began to humiliate her and intimidate her by having Jones do jobs that were within Cunliffe's liaison duties. Wright told Cunliffe that she was paranoid, a troublemaker, "that if she were white he [Wright] would not be having these problems." (*Id.* ¶¶ 17, 18.) Wright further limited Cunliffe's involvement in certain school activities. (*Id.* ¶¶ 54, 55.)

In December 2009, the Board conducted an audit of King's STLS program. (*Id.* ¶ 57.) Cunliffe passed the audit, although there was a suggestion for better fraud controls. Jones failed the audit. (*Id.* ¶¶ 61, 62, 69.) Subsequently after the audit, Wright wrote a falsified reprimand

---

[2] Cunliffe repeatedly uses the words "alleged" or "rumored" when referring to Jones's status as Wright's girlfriend. (*See* SAC ¶¶ 15, 17, 55, 69.)

and recommendation to terminate Cunliffe.  (*Id.* ¶ 20.)  In May 2010, Wright reduced Cunliffe's

performance rating to an "unsatisfactory."  (*Id.* ¶ 104.)   On August 13, 2010, Cunliffe was

notified that her position was terminated based on "redefinition."  (*Id.* ¶ 118.)  Wright also

placed Cunliffe on a "Do Not Hire" list.  (*Id.* ¶ 121.)  Cunliffe participated in a due process

hearing concerning her dismissal on November 9, 2010.  (*Id.* ¶ 127.)

On August 10, 2012, Cunliffe filed this lawsuit, naming only the Board and Wright as

Defendants and asserting claims under §§ 1983, 1985, and 1986 regarding her written reprimand,

unsatisfactory rating, and dismissal by the Board.  On August 14, 2012, Cunliffe filed an

Amended Complaint, in which she added claims under § 1981 and the First Amendment.  On

November 1, 2012, Cunliffe filed another Amended Complaint that was substantively identical

to her First Amended Complaint.

After the Board moved to dismiss Cunliffe's §§ 1983, 1985, and 1986 claims, Cunliffe

requested leave to amend her claims and filed a Second Amended Complaint ("SAC") on

July 22, 2013.[3]   In the SAC, Cunliffe again named the Board and Wright as Defendants and also

named the following additional Defendants:  Sullivan; Jones; Cheryl Colston, the Board's former

Director of Labor and Employee Relations; Tom Krieger, the Board's Talent Office Manager;

Reshorna Fitzpatrick, the Board Hearing Officer for one of Cunliffe's grievances; and two

unknown individuals identified as Jane and John Doe, Inspector General investigators.  The

SAC's nineteen counts include:  claims under the First and Fourteenth Amendments for

retaliation and violation of substantive and procedural due process and equal protection; statutory

claims under 42 U.S.C. §§ 1981, 1983 for race discrimination and harassment; state law claims

under the Illinois False Claims Act ("IFCA"), the Illinois Whistleblower Act, 740 ILCS 174/1,

---

[3] On July 31, 2013, Cunliffe filed a "corrected" Second Amended Complaint under seal
and refiled it unsealed on August 16, 2013.

and the Illinois School Code, 105 ILCS 5/34-85; and Illinois common law claims for retaliatory discharge, tortious interference with contractual relations, conspiracy, and intentional infliction of emotional distress.

## LEGAL STANDARD

Federal Rule of Procedure 8 requires that the complaint "provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotation marks omitted). When assessing a Rule 12(b)(6) motion to dismiss, courts construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and make all reasonable inferences in favor of the plaintiff. *Id.* However, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Claims are factually plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The pleadings of *pro se* litigants are not held to the same stringent standards as pleadings drafted by formally trained lawyers; instead, they must be liberally construed. *See Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999) (citing *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988)). Under this standard, a *pro se* complaint "may only be dismissed if it is beyond doubt that there is no set of facts under which the plaintiff could obtain relief." *Wilson*, 839 F.2d at 378. Despite the deferential standard for *pro se* litigants, the pleadings still must comply with the procedural rules governing them, and the complaint still must be

"otherwise understandable." *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998); *see also Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001).

## ANALYSIS

Sixteen of the counts (Counts I through VII and XI through XIX) are directed against Wright in both his official and individual capacities; fifteen of the counts (Counts II through VII and IX through XIII, XV and XVII through XIX) are directed against Sullivan in both his official and individual capacities; and fifteen of the counts (Counts II through VIII, XI through XV and Counts XVII through XIX) are directed against the Board.

*Official Capacity Claims*

Cunliffe has named Wright, Sullivan and the other, unserved individual Defendants (Colston, Krieger, Fitzpatrick, Jones, Jane and John Doe) in their official capacities as well as their individual capacities. Claims against a government official in his official capacity are treated the same as claims against the governmental unit for which he works. *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citing *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006)). Indeed, in her response brief, Cunliffe appears to agree that the claims asserted against the individual defendants in their official capacities should be dismissed. Because the official capacity claims are redundant as those asserted against the Board, all the official capacity claims must be dismissed. *See, e.g., Michael M. v. Bd. of Educ. of Evanston Tp. High Sch. No. 202*, No. 09 C 797, 2009 WL 2258982, at *2 (N.D. Ill. July 29, 2009) (dismissing claims against individual defendants in their official capacities as redundant when the municipal entity employer was also a named defendant). Consequently, Counts I through VII and XI through XIX against Wright in his official capacity; Counts II through VII and IX through XIII, XV and XVII through XIX against Sullivan in his official capacity; and Counts II through XIII

and XV through XIX against the other individual Defendants in their official capacities are dismissed with prejudice.

*Rule 4(m)*

Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve a defendant within 120 days of the filing of the complaint to avoid dismissal:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

Fed. R. Civ. P. 4(m). Cunliffe filed the SAC naming the additional Defendants on July 22, 2013, approximately ten months ago. She has not served Defendants Colston, Krieger, Fitzpatrick, Jones, Jane and John Doe. Cunliffe was put on notice of the requirements of Rule 4(m) no later than February 14, 2014, when Defendants raised the issue in their Reply brief, and she still failed to effect service on those Defendants. Defendants Colston, Krieger, Fitzpatrick, Jones and the two unknown Defendants, Jane and John Doe, are therefore dismissed without prejudice under Rule 4(m).

*Statute of Limitations*

A complaint can also fail to state a claim under Rule 12(b)(6) "[i]f the allegations of the complaint 'show that relief is barred by the applicable statute of limitations.'" *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 802 (7th Cir. 2008) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)). A statute of limitations defense "may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). While a complaint is not required to anticipate affirmative defenses and address them, "dismissal is appropriate when the plaintiff pleads himself out of

court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009) (quoting *Hollander v. Brown*, 457 F.3d 688, 690 (7th Cir. 2006)).

According to the SAC, Cunliffe was notified of her termination on August 13, 2010. (SAC ¶ 118). Cunliffe first filed her action on August 10, 2012. On July 22, 2013, she filed the SAC and added new claims and the new Defendants. Defendants argue that the statute of limitations bars Cunliffe's newly raised claims found in the SAC and also requires dismissal of newly named Defendants.

<u>Claims with a One-Year Statute of Limitations</u>

Defendants argue that Cunliffe has asserted several new state law claims that have a one-year statute of limitation and, thus, are time-barred. Specifically, those include Illinois state law claims for: violations of the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.* (the "IWA") (Count XII); discharge in violation of public policy (XV); Illinois common law retaliatory discharge (XVII); conspiracy (XVIII); and intentional infliction of emotional distress (XIX).

Under Illinois law, tort claims against a government entity or its employees have a one-year statute of limitations under the Tort Immunity Act, 745 ILCS 10/8-101. As such, Cunliffe's tort claims, as contained in Counts XV, XVII, XVIII, and XIX, all provide a one-year time bar. *See* 745 ILCS 10/8-101; *see also Grayer v. Welch*, No. 09 C 3924, 2011 WL 4578373, *11 n.14 (N.D. Ill. Sept. 30, 2011) (explaining that the one-year bar applies to a common law retaliatory discharge claim against a government employer in Illinois); *Halleck v. Cnty. of Cook*, 637 N.E.2d 1110, 1113 (Ill. App. Ct. 1994) (holding that the one-year bar applies to a retaliatory discharge claim against county); *Cherry v. Davis*, No. 12 C 4070, 2013 WL 1628236, at *2-3 (N.D. Ill. Apr. 15, 2013) (holding that plaintiff's conspiracy and intentional infliction of

emotional distress claim are barred by the Tort Immunity Act).  The Tort Immunity Act's one-year bar also applies to Cunliffe's IWA claim in Count XII, because that claim is analogous to the tort of retaliatory discharge.  *See, e.g., Padilla v. Cnty. of Cook*, 100 F. Supp. 2d 1145, 1146-47 (N.D. Ill. 2000) (explaining that the plaintiff's Whistleblower Act claim is "related and analogous to a retaliatory discharge cause of action under Illinois law").

Cunliffe argues that she did not realize that she had some of these causes of action until she received discovery during this case.  However, it is well settled under Seventh Circuit law that the statute of limitations began to run from the date of the plaintiff's injury, not when the plaintiff realizes she has a legal claim.  The Seventh Circuit has instructed that "[a] plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful."  *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995).  Accordingly, in *Thelen*, the Seventh Circuit held that the plaintiff discovered his injury when first informed of his termination, not when he later learned that his replacement was 33 years younger.  *Id.*

As the allegations of the SAC make clear, Cunliffe's new state law claims are all based on how Cunliffe was treated during her employment and/or relate to her termination from that employment.  Specifically, she alleges that she was injured when she received a falsified reprimand and performance rating and when she was ultimately terminated.  (*See* SAC ¶¶ 254-263, 265-266, 268-269, 270-273.)  As such, the statute of limitations began running no later than August 13, 2010, when Cunliffe was notified of her termination, and expired one year later. Even if these state law claims related back to Cunliffe's original complaint filed on August 10, 2012, they would still be untimely.  By her own allegations, Cunliffe has pleaded herself out of court on those claims.  Consequently, Cunliffe's claims for violation of the IWA (Count XII); discharge in violation of public policy (XV); Illinois common law retaliatory

discharge (XVII); conspiracy (XVIII); and intentional infliction of emotional distress (XIX) are dismissed with prejudice.

Claims with a Two-Year Statute of Limitations

Defendants also argue that Cunliffe's claims with a two-year statute of limitations period are untimely. These claims involve substantive and procedural due process claims under the Fourteenth Amendment (Count III, IV & V) and a race discrimination claim under § 1983 (Count VI).[4]

Fourteenth Amendment due process claims and § 1983 claims have a two-year statute of limitations under Illinois's two-year personal injury statute of limitations. *See, e.g., Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) ("the appropriate statute of limitations for § 1983 cases filed in Illinois is two years as set forth in 735 ILCS § 5/13–202"); *Manley v. City of Chicago*, 236 F.3d 392, 395 (7th Cir. 2001) (Fourteenth Amendment procedural due process claims are subject to Illinois's two-year statute of limitations). As discussed above, the statute of limitations accrues from when the plaintiff knows or has reason to know of the injury giving rise to the cause of action. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992); *see also Thelen*, 64 F.3d at 267. Thus, in *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981), the Supreme Court held that the statute of limitations for a § 1983 employment claim began to run on the date that the plaintiffs received notice of their termination, not when they

---

[4] Cunliffe has entitled Count VI "Race Discrimination in Violation of Sections 1981 & 1983 (Defamation Plus Theory)." Cunliffe argues that the four-year statute of limitations for § 1981 means this Count remains timely. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). However, as discussed more fully *infra*, this Court adopts the holdings in the majority of Circuit Courts and recent district court decisions in this Circuit that § 1981 does not create a private right of action independent of § 1983 against state actors. As such, the applicable statute of limitations is the two-year statute of limitations for § 1983 claims. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 120-121 (3d Cir. 2009) (rejecting plaintiff's argument that her untimely § 1983 claim was saved by the four-year limitations period of § 1981 and holding that § 1981 does not provide a private right of action against state actors).

were actually terminated. The *Chardon* Court, citing its previous decision in *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980), stressed that the statute of limitations accrues at "the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Id.* (emphasis in the original).

As with the claims barred by the one-year statute of limitations, Cunliffe's claims in Counts III, IV, V and VI are based on her allegedly unlawful termination. Accordingly, Cunliffe's claims accrued on August 13, 2010, the date that she learned of her termination. She first asserted these counts in her SAC, which was filed on July 22, 2013, beyond the two-year statute of limitations. However, her claims will be deemed timely if they relate back to those claims asserted in Cunliffe's original Complaint, which was filed within the two-year statute limitations on August 10, 2012.

Federal Rule of Civil Procedure 15(c) provides that an amendment to a pleading relates back to the date of a timely pleaded complaint if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). An amended complaint will relate back to the original complaint if the amended complaint "merely adds legal conclusions or changes the theory of recovery," as long as "the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading." *Henderson v. Bolanda,* 253 F.3d 928, 931 (7th Cir. 2001) (internal citations omitted); *see also Bularz v. Prudential Ins. Co. of Am.*, 93 F.3d 372, 379 (7th Cir. 1996) (Rule 15(c) generally permits relation back "where an amended complaint asserts a new claim on the same core of facts, but involving a different substantive legal theory than that advanced in the original pleading."). Accordingly, courts consider whether the defendant had notice of the new claim based on the

facts as originally pled.  *See, e.g., Staren v. Am. Nat'l Bank & Trust Co.*, 529 F.2d 1257, 1263 (7th Cir. 1976) ("[N]otice is the critical element involved in Rule 15(c) determinations.").  Rule 15(c) is liberally construed to "effectuate the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems."  *Id.*

Cunliffe submitted her original Complaint on a form used by *pro se* plaintiffs for complaints of violations of constitutional rights.  In paragraph 6, Cunliffe checked the boxes that Defendants conspired to violate her civil rights and failed to intervene to protect her from violation of her rights, as well as added in that Defendants retaliated against her for whistleblower activity and freedom of speech.  In paragraph 7, Cunliffe also stated that Defendants violated her due process rights.  (*See* Compl., Dkt. No. 1, pp. 2-3).  As an attachment to that Complaint, Cunliffe included a lengthy document detailing additional factual allegations, including the process by which she was terminated.  (*Id.* pp. 6-21).  In paragraphs 29, 34, 40, 41, and 43, Cunliffe specifically mentions violations of her due process rights.  (*Id.* pp. 17-19.)  Cunliffe's newly asserted Fourteenth Amendment claims found in the SAC are based on the same "conduct, transaction, or occurrence" as alleged in Cunliffe's original Complaint – specifically, the lack of process Cunliffe received for her unlawful termination.  Likewise, Cunliffe's original Complaint gave Defendants sufficient notice of those claims.  Consequently, Cunliffe's Fourteenth Amendment claims in the SAC (Count III, IV & V) relate back to her original Complaint and are timely under the statute of limitations.

In the SAC, Cunliffe also asserts a new claim for race discrimination in violation of § 1983 (Count VI).  This claim contains factual allegations about race discrimination that Cunliffe allegedly suffered, including that Defendant Wright allegedly "told Cunliffe if she were a White counselor he would not be having all of the problems out [*sic*] her."  (SAC ¶ 210.)  Her

original Complaint, however, did not contain any factual allegations involving race or otherwise mention race discrimination.

Cunliffe's § 1983 race discrimination claim asserted in the SAC does not depend on the "same core of facts" as those asserted in the original Complaint, *see Bularz*, 93 F.3d at 379, and, as such, Defendants did not have notice of her race discrimination claim based on the original Complaint. Accordingly, Cunliffe's newly asserted race discrimination claim under § 1983 does not relate back to the original Complaint and is barred by the two-year statute of limitations. Cunliffe's race discrimination claim under § 1983 (Count VI) is dismissed with prejudice.

*Failure to State a Claim*

Defendants also argue that Cunliffe has failed to state a claim on her First Amendment retaliation claim (Count I); §§ 1981 and 1983 claims for race discrimination (Counts II and VI); Fourteenth Amendment substantive and procedural due process claims (Counts III, IV, V, VI, and VIII); an Illinois School Code claim (Count XIV); failure to supervise claims (Counts IX and X); Illinois Whistleblower/False Claims Act claims (Count XI, XII and XIII); and tortious interference with contractual relations (Count XVI).[5]

First Amendment Retaliation (Count I)

Under the First Amendment, a public employee is protected from retaliation by his government employer for engaging in protected speech. *Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 574 F.3d 370, 376 (7th Cir. 2009) (internal citations omitted). To state a First Amendment retaliation claim under § 1983, the employee must show: "(1) that his speech was constitutionally protected; (2) that the protected speech was a 'but-for' cause of the employer's

---

[5] Defendants also argue that Cunliffe's common law conspiracy and intentional infliction of emotional distress claims (Counts XVIII and XIX, respectively) fail to state a claim. However, as discussed above, as these claims are clearly time-barred under the one-year statute of limitations, and therefore, those arguments do not need to be addressed.

action; and (3) that he suffered a deprivation because of the employer's action." *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011) (internal citations omitted). However, a public employee's speech is not protected if it is made pursuant to her official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

In *Garcetti*, the plaintiff, a deputy district attorney, alleged that he was retaliated against at work in violation of the First Amendment, after he wrote a memorandum recommending a dismissal of a case based on government misconduct. *Id.* at 413-15. The Supreme Court rejected his claim, holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421-23. *Garcetti* can extend to claims against co-employees and individual defendants. *See, e.g., Abcarian v. McDonald*, 617 F.3d 931, 936 (7th Cir. 2010).

The Seventh Circuit has recognized that *Garcetti* only bars retaliation claims "if the plaintiff spoke as an employee rather than as a citizen." *Id.* (internal citations omitted). To determine whether a plaintiff spoke as an employee or as a citizen, the court "take[s] a practical view of the facts alleged in the complaint, looking to the employee's level of responsibility and the context in which the statements were made." *Id.* "The controlling factor is whether the speech 'owes its existence to a public employee's professional responsibilities.'" *Callahan v. Fermon*, 526 F.3d 1040, 1044 (7th Cir. 2008) (quoting *Garcetti*, 547 U.S. at 421). In *Abcarian*, the Seventh Circuit affirmed the dismissal of a complaint where the plaintiff's alleged speech was within his scope of responsibilities as a physician at a university. *Abcarian*, 617 F.3d at 937. The Court further noted that the plaintiff's conclusory allegations that he spoke as a citizen on a matter of public concern were insufficient to state a plausible claim. *Id.*

In this case, Cunliffe's allegations in the SAC clearly establish that her alleged speech was made pursuant to her duties as a public employee. According to the SAC, it was Cunliffe's responsibility to ensure that the correct students were enrolled in the program, and it is clear from the context that Cunliffe reported the suspected fraud as part of those responsibilities. (SAC ¶¶ 13-14, 30-35.) She alleges that she discovered the fraud in the course of performing her duties and that she reported the fraud out of fear that she could be framed or blamed for the fraud because of her responsibilities. (SAC ¶¶ 13, 14, 49.) Cunliffe makes no allegations that she was acting as a citizen or that she otherwise stepped out of her employment duties to report the fraud. Consequently, Cunliffe's First Amendment claim (Count I) is dismissed without prejudice for failure to state a claim.

§ 1981 Claims for Race Discrimination, Harassment, Hostile Work Environment (Count II)

Defendants first argue that Cunliffe has failed to state a § 1981 claim on Count II because she has failed to bring that claim pursuant to § 1983. In *Jett v. Dallas Independent School District*, 491 U.S. 701, 731 (1989), the Supreme Court held that § 1981 does not create a private right of action against state actors, government entities or municipalities. Instead, the *Jett* Court held that violations of § 1981 must be pursued under the remedial provisions of § 1983. *Id.* at 733. In 1991, however, Congress amended § 1981 to add subsection (c), thereby raising the question whether the amendment overruled *Jett* to create an independent right of action under § 1981. *See Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 509 n.3 (7th Cir. 2012).

Although the Seventh Circuit has not squarely addressed the issue, the majority of other Circuit Courts and, recently, district courts in this Circuit have held that *Jett* remains good law

and that, as such, § 1981 claims against state actors remain actionable only through § 1983.[6] *See De v. City of Chicago*, 912 F. Supp. 2d 709, 730 (N.D. Ill. 2012); *Campbell v. Forest Pres. Dist. of Cook Cnty.*, 13 C 845, 2013 WL 4560231, at *2 (N.D. Ill. Aug. 28, 2013) (noting that "six Circuit Courts and a number of district courts in this Circuit have found that claims against state actors asserting violations of rights protected by § 1981 must still be brought under § 1983" and surveying cases). This Court agrees with the reasoning set forth by Judges Castillo and Durkin in *De* and *Campbell*, respectively, and joins with the majority of the Circuit Courts in holding that there is no private right of action against state actors in § 1981. As such, Cunliffe's § 1981 claim contained in Count II is dismissed without prejudice.[7]

> ### Fourteenth Amendment Due Process "Stigma Plus" Claim (Counts III, V, and VII)

In Counts III, V, and VII, Cunliffe asserts the same Fourteenth Amendment due process claim, albeit titled differently: that Defendants' false statements deprived Cunliffe of her liberty

---

[6] *See, e.g., McGovern*, 554 F.3d at 120–21 (3d Cir. 2009); *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006); *Oden v. Oktibbeha Cnty.,* 246 F.3d 458, 463–64 (5th Cir. 2001); *Butts v. Cnty. of Volusia*, 222 F.3d 891 (11th Cir. 2000); *Dennis v. Cnty. of Fairfax,* 55 F.3d 151, 156 n. 1 (4th Cir. 1995). Although the Ninth Circuit held that the 1991 amendment created a right of action for § 1981 claims against municipalities in *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996), more recently, in *Pittman v. Oregon*, 509 F.3d 1065, 1074 (9th Cir. 2007), the court declined to extend that holding to create a private cause of action against arms of the state.

[7] Defendants also argue that, apart from the statute of limitations bar, Cunliffe has failed to sufficiently allege an official policy or custom so as to state a claim on Count VI. However, as discussed above, Cunliffe's newly pled allegations of race discrimination forming the basis of Count VI are time-barred, and, therefore, it is unnecessary to address this argument.

interest in her reputation and, as a result, damaged her ability to find employment.[8]  To state a due process claim, the plaintiff must have been deprived of a "cognizable" property or liberty interest without due process.  *Khan v. Bland*, 630 F.3d 519, 535 (7th Cir. 2010).  Simply alleging defamatory statements that harm one's reputation is insufficient.  "[M]ere defamation by the government does not deprive a person of liberty protected by the Fourteenth Amendment, *even when it causes serious impairment of one's future employment*."  *Id.* at 534 (quoting *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002)) (emphasis added).  Instead, the plaintiff must allege an "'alteration of legal status,' such as the governmental deprivation of a right securely held."  *Khan*, 630 F.3d at 534 (quoting *Paul v. Davis*, 424 U.S. 693, 708-709 (1976)); *see also Santana v. Cook Cnty. Bd. of Rev.*, 679 F.3d 614, 621 (7th Cir. 2012) (plaintiff "must allege that the defendants' defamatory statements alter or extinguish a right or status previously recognized by state law.")  This is referred to as the "stigma plus" test.  *Khan*, 630 F.3d at 534.

In *Santana*, 679 F.3d at 621 (7th Cir. 2012), the plaintiff, a tax consultant for the Cook County Board of Review, alleged that he was wrongly "red flagged" by his employer, harming his reputation and ability to secure post-termination employment.  The Seventh Circuit affirmed the dismissal of his Fourteenth Amendment "stigma plus" claim, stating that the alleged defamatory statements were insufficient to alter or extinguish the plaintiff's legal rights.  *Id.* at 621-22; *see also Simonsen v. Board of Ed. of the City of Chicago*, No. 01 C 3081, 2002 WL

---

[8] In moving to dismiss Count III, Defendants also argue that Cunliffe does not have a protected property interest in her continued employment.  Although Cunliffe alleges in the body of the SAC that she had a property interest in her employment, *see* SAC ¶ 148, Cunliffe alleges a liberty interest, not a property interest in Count III.  Either way, Cunliffe has not sufficiently alleged a protected property interest in her continued employment to state a substantive due process claim.  "Employment rights are state-created rights, and a public employee's interest in continued employment does not rise to the level of a 'fundamental' right protected by substantive due process." *Horstmann v. St. Clair Cnty., Ill.*, 295 F. App'x 61, 64 (7th Cir. 2008) (citing *Zorzi v. County of Putnam*, 30 F.3d 885, 895 (7th Cir. 1994) (substantive due process does not protect occupational liberty)).

230777, *13 (N.D. Ill. Feb. 14, 2002) (plaintiff-teacher, who claimed damage to reputation after being fired, failed to state a claim for deprivation of liberty interest; court noted that even public statements about plaintiff's incompetence would not be sufficiently stigmatizing to support claim).

In the SAC, Cunliffe does not allege that Defendants altered or extinguish her legal rights so as to meet the "plus" part of her stigma plus claim. *See Khan*, 630 F.3d at 534 (holding plaintiff had not established the "plus" factor of the stigma plus claim). Rather, she makes conclusory statements that her reputation was damaged by Defendants' harmful statements about her, and this made it difficult to find employment. Cunliffe has not sufficiently alleged the "plus" factor to state a Fourteenth Amendment deprivation of her liberty interest. Consequently, Counts III, V, and VII are dismissed without prejudice.

<u>Procedural Claims Related to Cunliffe's Post-Dismissal Hearing (Counts IV and XIV)</u>

In Counts IV and XIV, Cunliffe asserts procedural due process claims under the Fourteenth Amendment and the Illinois School Code, respectively, for alleged violations of her procedural due process rights with respect to her post-dismissal hearing on November 9, 2010. Cunliffe alleges that, as a tenured teacher, she had a protected property interest in her continued employment and that the November hearing was a "sham," in violation of her rights. Defendants argue that Cunliffe was laid off for economic reasons and that the Illinois School Code does not create a property interest protectable by the Fourteenth Amendment when a tenured teacher is laid off for economic reasons.

The Due Process Clause of the Fourteenth Amendment guarantees both substantive and procedural due process rights. However, "the range of interests protected by procedural due process is not infinite." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972). In

18

any due process case involving the deprivation of property, "the threshold question is whether a property interest actually exists." *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993) (internal citations omitted). The Constitution does not create property interests; rather, protected property interests must derive from an independent source such as state law. *Id.*; *see also Roth*, 408 U.S. at 577. Where a state statute creates a protectable property interest in employment, "the state may not take it away without notice and a hearing – though 'this procedure need not be elaborate and can be satisfied with less than a full evidentiary hearing.'" *Buttitta*, 9 F.3d at 1202 (quoting *Smith v. Eaton*, 910 F.2d 1469, 1472 (7th Cir. 1990)).

In *Chicago Teachers Union, Local No. 1 v. Board of Education*, 963 N.E.2d 918, 927 (Ill. 2012), the Illinois Supreme Court, answering questions certified to it by the Seventh Circuit, held that the Illinois School Code does not give "laid-off tenured teachers either a substantive right to be rehired after an economic layoff or a right to certain procedures during the rehire process." In so holding, the Illinois Supreme Court, citing to the decision *Land v. Board of Education*, 781 N.E.2d 249 (Ill. App. Ct. 2002), explained that the School Code does not exempt tenured teachers from economic layoffs. *Id.* at 924.

Following *Chicago Teachers Union*, the district court in *Fennerty v. Board of Education*, 949 F. Supp. 2d 826, 830 (N.D. Ill. 2013), addressed whether a tenured teacher's procedural due process rights were violated because she did not receive a hearing when being laid off for economic reasons. The *Fennerty* court noted that the Illinois School Code requires that tenured teachers receive certain procedures, including a hearing, when being terminated for cause. *Id.* (citing 105 ILCS 5/34-84 and 34-85). However, where a tenured teacher is terminated for economic reasons, those same procedural rights do not apply; rather, the only process required is that the teacher receive advance notice of the layoff. *Id.* (citing *Land*, 781 N.E.2d at 919-924).

19

As such, the Illinois School Code does not confer a protectable property interest to the teacher where the layoff was for economic reasons. The *Fennerty* court granted the defendants' motion to dismiss, holding that the teacher failed to state a claim for violation of her due process rights. *Id.* Likewise, in *Price v. Board of Education,* Nos. 11 C 04463, 11 C 04974, 11 C 09322, 2013 WL 1914325, at *6 (N.D. Ill. May 8, 2013), the district court rejected similar due process claims by tenured teachers who were laid off for economic reasons.

Cunliffe alleges that she received notice from the Board on August 13, 2010 that her position was closed due to "redefinition" for economic reasons; there are no allegations that she was terminated for cause. (SAC ¶¶ 118, 134, 148.) She then filed a grievance about her unsatisfactory rating and the redefinition of her position, including a request to be placed in the teacher reassignment pool. (SAC ¶ 122.) On November 9, 2010, a combined hearing was held regarding the procedures used for Cunliffe's unsatisfactory rating and her request to be placed in the teacher reassignment pool, although not the reason for the redefinition. (SAC ¶¶ 127, 133.) Cunliffe alleges that the hearing was "a sham" and that she was "not allowed to develop a factual record and evidence in the Defendant's own possession was ignored." (SAC ¶ 200.)

In the allegations of the SAC, Cunliffe acknowledges that the Board had issued directives to increase class size and lay off teachers. Cunliffe states that the Board's directives did not affect her position because King was entitled to three counselors under the Board's financial formula. (SAC ¶¶ 135-136.) Cunliffe acknowledges that King had four, not three, counselors, of which she was the most senior, and alleges that the fourth counselor was a position created by Wright and paid out of discretionary monies. (SAC ¶ 136.) Cunliffe alleges that she was replaced by a first-year Caucasian counselor; however, based on the SAC's allegations, it appears that King simply eliminated the fourth counselor position, so that the fourth position was

not replaced.  (SAC ¶ 138.)  In her Response Brief, Cunliffe further clarifies that Wright rescinded this "discretionary budgeted fourth position that was cut from the budget."  (Resp. Br. at 19.)

By her current allegations, Cunliffe has not stated a plausible claim that she was deprived of a property interest in a post-termination hearing in a way that violated her procedural due process rights.  Although she argues that her layoff was not for economic reasons, her allegations undercut this argument.  Cunliffe acknowledges that there were only three counselor positions funded by the Board and that the fourth was a discretionary position created by Wright; she also acknowledges that the stated reason for the redefinition of her position was for economic reasons, not cause.  Although she makes additional arguments in her Response Brief that the school officials were trained on how to fire tenure teachers without hearings, she has not alleged any facts to support those arguments in the SAC.  (*See* Resp. Br. at 19.)  Where a tenured teacher is fired for economic reasons, they do not have a protected property interest in a post-termination hearing.  *See Fennerty*, 949 F. Supp. 2d at 830.

Furthermore, even if Cunliffe sufficiently alleged that her termination for economic reasons was simply a pretext to cover up a retaliatory discharge, she has not sufficiently alleged that she was deprived of the proper procedural safeguards.  By her own allegations, she received notice of her termination and also a hearing.  In general, procedural due process is satisfied where there "is notice of charges and an opportunity for a hearing appropriate to the nature and gravity of those charges."  *Bigby v. City of Chicago*, 766 F.2d 1053, 1058 (7th Cir. 1985) (citing *Mathews v. Eldridge,* 424 U.S. 319, 348-49 (1976); *see also Buttitta*, 9 F.3d at 1201 ("the state may not take [the property interest] away without notice and a hearing – though 'this procedure need not be elaborate and can be satisfied with less than a full evidentiary hearing.'")).  Cunliffe

21

makes conclusory allegations that it was a "sham hearing" (*see* SAC ¶ 201), but does not allege sufficient facts to support that she did not receive an adequate hearing.

Cunliffe has not alleged that she was deprived of a protectable property interest without proper procedures to state a Fourteenth Amendment procedural due process claim. Consequently, Counts IV and XIV are dismissed without prejudice.

Fourteenth Amendment "Impartial Tribunal" Claim (Count VIII)

In Count VIII, Cunliffe alleges that her right to an "impartial tribunal" was violated because the hearing officer, Fitzpatrick, reported to Colston, to whom Cunliffe allegedly complained about Wright. (SAC ¶¶ 229-233.) These allegations are insufficient to state a claim. A party claiming bias must allege prejudicial trial conduct and evidence of a judge's personal bias. *See Eychaner v. Gross,* 779 N.E.2d 1115, 1146 (Ill. 2002). An administrative tribunal is entitled to a presumption of honesty, except where there are "facts showing a high probability of actual bias, such as the decision-maker's having a pecuniary interest in the outcome." *Barszcz v. Bd. of Trustees*, 400 F. Supp. 675, 679 (N.D. Ill. 1975) *aff'd sub nom. Barszcz v. Bd. of Trustees*, 539 F.2d 715 (7th Cir. 1976). "A mere possibility of prejudice is insufficient to show that a board, or any of its members, was biased." *Collura v. Bd. of Police Comm'rs of Vill. of Itasca*, 498 N.E.2d 1148, 1152 (Ill. 1986); *see also Grissom v. Bd. of Educ.*, 388 N.E.2d 398, 400 (Ill. 1979) (plaintiff "must show more than the mere possibility of bias").

Here, Cunliffe has not alleged more than a mere possibility of prejudice on the part of the hearing officer. Accordingly, Count VIII is dismissed without prejudice.

Failure to Supervise (Counts IX and X)

In Count IX, Cunliffe asserts a claim for "failure to supervise" against Defendants Colston, Krieger, and "Inspector General," which is presumably against Sullivan. In Count X,

Cunliffe asserts another claim for "failure to supervise" against "Director Inspector General." As discussed above, Colston and Krieger are dismissed as Defendants because they have not been served.

Cunliffe has failed to state a claim against Sullivan on these Counts. In the SAC, Cunliffe rarely mentions Sullivan and the few allegations that pertain to him are purely conclusory. She has not pleaded any facts that would support that Sullivan had supervisory authority over the other Defendants or that he failed in a duty to do so. Furthermore, as Inspector General, Sullivan did not have the authority under the Illinois School Code to supervise the other Defendants. Rather, the Illinois School Code provides that the Inspector General "[s]hall have the authority to conduct investigations into allegations of or incidents of waste, fraud, and financial mismanagement in public education . . . by a local school council member or an employee, contractor, or member of the board . . . ." 105 ILCS 5/34-13.1(a).

Furthermore, under the Tort Immunity Act, 745 ILCS 10/3-108, public employees are immune from claims for failure to supervise an activity on or the use of public property, except where the employee is guilty of willful and wanton conduct proximately causing the injury. 745 ILSC 10/3-108(a); *see also Edmonson v. Chicago Bd. of Educ.*, 379 N.E.2d 27, 30 (Ill. App. Ct. 1978) (dismissing failure to supervise claim against Board employee). Cunliffe has not alleged that Sullivan (or Colston or Krieger) acted with willful and wanton conduct to overcome this immunity. Accordingly, Counts IX and X are dismissed without prejudice.

## Illinois False Claims Act (Count XI)

In Count XI, Cunliffe asserts a claim for retaliation in violation of the Illinois False Claims Act, 740 ILCS 175/1 (the "IFCA").[9]  The IFCA makes it unlawful to knowingly present, or cause to be presented, to the government a false or fraudulent claim for payment or to make or use, or cause to be made or used, a false record or statement material to a false and fraudulent claim paid or approved by the government.  740 ILCS 175/3(a)(1).  Claims pursuant to the IFCA are analyzed like those under the federal False Claims Act and are subject to the heightened pleading requirements of Rule 9(b).  *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 815 (N.D. Ill. 2013); *Scachitti v. UBS Fin. Servs.*, 831 N.E.2d 544, 557 (Ill. 2005).  Rule 9(b) requires plaintiffs to plead "the 'who, what, when, where, and how: the first paragraph of any newspaper story,' of the 'circumstances constituting fraud.'"  *Goldberg*, 929 F. Supp. 2d at 815 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

To proceed in an action under the IFCA, a private plaintiff files a *qui tam* action in the name of the State of Illinois.  *See* 740 ILCS 175/4(b).  In this case, Cunliffe has not alleged that she filed a *qui tam* action in the name of the State of Illinois under the IFCA.  Consequently, Cunliffe has failed to state a claim under the IFCA (Count XI), and it is dismissed with prejudice.

## Whistleblower Claims (Counts XII and XIII)

In addition to the one-year statute of limitations bar, Cunliffe fails to state a claim for retaliation under the IWA in Count XII, which she asserts against all Defendants.  As a preliminary matter, there is no individual liability under the IWA, which "only creates a cause of

---

[9] Cunliffe has entitled this Count "Retaliation in Violation of the Illinois Whistleblower Reward and Protection Act (Illinois False-Claims Act)."  Effective July 27, 2010, the Illinois Whistleblower Reward and Protection Act was re-amended and codified as the Illinois False Claims Act.  *See* Ill. Pub. Act 96–1304, § 10.

action against an employer." *Martorana v. Vill. of Elmwood Park*, 12 C 6051, 2013 WL 1686869, *4 (N.D. Ill. Apr. 18, 2013) (quoting *Robinson v. Morgan Stanley*, No. 06 C 5158, 2007 WL 2815839, at *15 (N.D. Ill. Sept. 24, 2007) (dismissing individual defendants with prejudice). Consequently, all individual Defendants are dismissed with prejudice as to Count XII.

Furthermore, Cunliffe has not stated a claim against the Board. The IWA prohibits employers from retaliating "against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule or regulation." 740 ILCS 174/15(b). However, Cunliffe has not alleged that she reported the information to a government official or law enforcement agency; rather, she alleges only that she reported it to Wright and the Inspector General, both of whom are Board employees. As such, Cunliffe has failed to state a claim against the Board. *See Stiles v. Int'l BioResources, LLC*, 726 F. Supp. 2d 944, 950 (N.D. Ill. 2010) (dismissing claim where plaintiff did not report illegal activity to government officials). Count XII is dismissed with prejudice as to the Board.

Cunliffe also has failed to state a claim on Count XIII, in which she asserts a claim for "Whistle Blower Protection 105 ILCS 5/34-2.4c" against all Defendants. Section 34-2.4c of the Illinois School Code prohibits any disciplinary action against an employee for disclosing information about "(1) a violation of any law, rule, regulation, or policy, or (2) waste, fraud, mismanagement, abuse of authority, or a danger to the health or safety of a student or the public." 105 ILCS 5/34-2.4c(b). Violation of this section is a Class A misdemeanor. However, the statute does not provide employees with a private right of action; accordingly, several courts in this district have held that no private right of action exists under 105 ILCS 5/34-2.4c. *See*

*Diadenko v. Folino*, 890 F. Supp. 2d 975, 993 (N.D. Ill. 2012); *Frazier v. Bd. of Educ.*, No. 03 C 0755, 2003 WL 21510328, *5 (N.D. Ill. June 27, 2003); *Burke v. Chicago Sch. Reform Bd. of Trustees*, 169 F. Supp. 2d 843, 848 (N.D. Ill. 2001). Consequently, Count XIII is dismissed with prejudice.

Tortious Interference with Contractual Relations, or, in the alternative,
Tortious Interference with Economic Advantage (Count XVI)

Finally, in Count XVI, Cunliffe asserts a claim for tortious interference with contractual relations, or alternatively, tortious interference with economic advantage against Wright. In order to state a claim for tortious interference with a contract, a plaintiff must allege the following:

> (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by the third party; and (5) damages.

*Purmal v. Robert N. Wadington & Assocs.*, 820 N.E.2d 86, 98 (Ill. App. Ct. 2004) (citing *Kehoe v. Saltarelli*, 786 N.E.2d 605, 612 (Ill. App. Ct. 2003)).

Cunliffe satisfies the first element in that she references her union's collective bargaining agreement, which suggests the existence of an employment contract between Cunliffe and the Board. She does not, however, allege that Wright's interference caused the Board to terminate that contract. Further, as an agent of the Board, Wright cannot be liable for interfering with his own contract. *Lombardi v. Bd. of Trustees Hinsdale Sch. Dist. 86*, 463 F. Supp. 2d 867, 873 (N.D. Ill. 2006) (dismissing an ex-teacher's claim against his former principal for tortious interference with contractual relations). Accordingly, Count XVI is dismissed without prejudice.

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss [96] is granted. The following are dismissed with prejudice:

(1) all official capacity claims asserted against the individual Defendants, as follows:

(a) Counts I through VII and XI through XIX against Wright in his official capacity;

(b) Counts II through VII and IX through XIII, XV and XVII through XIX against Sullivan in his official capacity; and

(c) Counts II through XIII and XV through XIX against Colston, Krieger, Fitzpatrick, Jones, Jane and John Doe in their official capacities;

(2) Count VI, XII, XIII, XV, XVII, XVIII, and XIX as to all Defendants.

Defendants Colston, Krieger, Fitzpatrick, Jones and the two unknown Defendants, Jane and John Doe, are also dismissed without prejudice under Rule 4(m). All other Counts are dismissed without prejudice. Cunliffe is granted leave to amend her claims, if she can do so in accordance with Rule 11, within thirty days of this Order.

Date:    June 20, 2014

JOHN W. DARRAH
United States District Court Judge

27